IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> ARGENTINO SALVADORE PURITA ) <br> and JERRY DON BROWN, ) <br> ) <br> Defendants. ) <br> _____ | NO.   CR 08-01195-TUC-CKJ(BPV) <br><br> **REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO SUPPRESS** |

On September 24, 2008, the Defendants Argentino Salvadore Purita and Jerry Don Brown were indicted for transportation of illegal aliens in violation of 8 U.S.C. §1324 [Doc. 13]. On November 17, 2008, Defendant Purita filed a Motion to Suppress the stop of his vehicle [Doc. 34]. Co-Defendant Brown filed a Notice of Joinder on November 20, 2008 [Doc. 36]. The Government filed its Response on December 2, 2008 [Doc. 39].

The matter came on for Evidentiary Hearing before the Court on January 21, 2009. The Government called as witnesses U.S. Border Patrol Agents Fernando De La Riva and Manuel Rodriguez. Excerpts of video deposition testimony of the material witnesses were also submitted. The Defendants called no live witnesses.

The Court, having considered the briefing, arguments, and evidence presented, recommends that the District Judge, after her independent review and consideration, enter an order **DENYING** Defendants' Motion to Suppress.

# FACTS

On August 28, 2008, U.S. Border Patrol (USBP) Agents Manuel Rodriguez and Fernando De La Riva were on patrol near Douglas, Arizona, in an unmarked service vehicle. The agents were observing traffic at the intersection of Leslie Canyon Road and Glenn Road as part of a USBP operation. They positioned their service vehicle just off the roadway so that they were facing southeast, with their headlights on, in order to observe traffic heading north on Leslie Canyon Road. At approximately 10:45 p.m., the agents observed the headlights of a vehicle approaching their location. The agents observed the vehicle, later identified as a silver 2008 Toyota Sienna minivan, miss the turn on to Glenn Road and travel on to the shoulder of the road to make the turn. The minivan quickly corrected itself and, as it passed in front of the headlights of the USBP service vehicle, the agents saw a passenger who never looked in their direction, despite what they perceived to be a near-miss of their vehicle. Only three visible occupants of the vehicle were observed by the agents at that time: a driver, a front-seat passenger, and one passenger in the back seat. The agents also noted that the minivan seemed to be riding extremely low for only containing three occupants.

The agents began to follow the minivan as it traveled westbound on Glenn Road. The agents ran a registration check and the vehicle's registration came back to a corporation in Sierra Vista, Arizona. As the agents followed the minivan, the minivan reduced its speed and the suspension of the vehicle was not bouncing very much, thereby suggesting that the minivan was carrying excessive weight in its rear area. The agents continued to follow the minivan for approximately three miles. When the minivan came to a stop at State Route 191, the agents observed that there was condensation on the corners of the rear window. The minivan then turned on to State Route 191, which, in the agents' experience, is a common route used by smugglers. For the next two to three minutes, the vehicle traveled north at a

speed of four to five miles per hour. A stop of the minivan was initiated when USBP Agent De La Riva activated the service vehicle's emergency equipment, and the minivan pulled over.

As the agents approached, they saw through the rear window that there were individuals lying down in the rear cargo area of the minivan. Agent Rodriguez approached the driver, who was later identified as Defendant Argentino Salvadore Purita, and instructed him to turn the vehicle off. After a second command to turn the vehicle off, Purita complied. The front passenger was identified as Co-Defendant Jerry Don Brown. Each Defendant was observed to have a firearm holstered on his hip. The Defendants were secured and taken into custody. Also located in the minivan were a total of eight illegal aliens, who were all detained.

Two of the illegal aliens, Rosa Maria Gomez-Hernandez and Rafael Gonzalez, were held as material witnesses. The material witness interviews were video-recorded (a copy of the video-recorded interviews was disclosed on a CD to the Defendants on September 16, 2008). The interviews were conducted by USBP Agent Manuel Rodriguez, with USBP Agent David Mendoza also being present. USBP Agent Rodriguez reported that material witness Rosa Maria Gomez-Hernandez stated that, on the day of the incident, the driver of the van (Purita) almost hit the USBP vehicle and that she hoped the immigration officials would pull them over because she was scared.

Material witness Gomez-Hernandez later testified at video depositions conducted in this matter on October 8, 2008. She first testified that the van went a "little bit off highway, just a little bit,"[1] but later agreed with defense counsel that the van made a wide turn when it turned in view of the USBP vehicle.[2] She testified that the van did not hit the USBP vehicle.[3] Material witness Rafael Gonzalez testified that he was hiding in the cargo area of

---

[1] Video Deposition at 28:31

[2] Video Deposition at 45:14

[3] Video Deposition at 30:30

- 3 -

the minivan, along with four other individuals, and their bodies lay partially on top of one another,[4] so that, as a result, he did not observe any events leading up to the stop of the vehicle.

## **DISCUSSION**

USBP Agents De La Riva and Rodriguez were on duty as a part of Operation Disrupt, i.e. an operation to disrupt alien smuggling in the Douglas, Arizona, area. They were positioned at the intersection of Leslie Canyon Road and Glenn Road. This is an area considered to be a known smuggling area. This umbrella of suspicion covers the entire southern half of the State of Arizona.

The agents' suspicion was drawn to the Purita vehicle because it was one of three vehicles to have entered their area that evening. At 10:45 p.m., the Defendants made a wide left turn that appeared to be on a collision course with the vehicle of the USBP agents, but the vehicles did not collide. The agents concluded that the Defendants almost missed their turn. The more suspicious aspect of the Defendants' vehicle was that the rear-seat passenger was sitting in the middle of the seat and that the vehicle was riding low. Admirably, the agents, post-stop, took photographs of the vehicle loaded and unloaded. The photographs supported their conclusion that the loaded vehicle was riding low.

As the vehicle traveled west on Glenn Road, it was at or slightly above the posted speed limit and there was no erratic driving. As a result of the agents' observations, they noted:

1) The vehicle was riding low.
2) The vehicle did not bounce very much, which supported the idea that the vehicle was loaded.
3) Condensation had formed on the rear window.
4) The vehicle traveled very slowly on Highway 191.

---

[4] Video Deposition at 1:21 to 1:23

- 4 -

1  Agent De La Riva stated that the temperature that night was warm and not too cold.
2  (Electronic Transcript of Hearing (ETH), page 23, lines 13-14.) Agent Rodriguez stated that
3  the temperature was cold at 55°. (ETH, page 75, lines 22-23.) Both agreed that
4  condensation has something to do with a difference in temperature. The Court submitted a
5  Weather Underground Report for Douglas, Arizona, for Wednesday, August 27, 2008, which
6  reported that at 10:56 p.m. the temperature was 69.1° F, the dew point was 63° F, and
7  humidity was at 81%. The amount of condensation observed by the agents was dramatically
8  different. Agent De La Riva saw two small squares of condensation at the bottom corners
9  of the rear window. (ETH, page 46, lines 13-17; page 53, lines 12-25.) Agent Rodriguez
10 observed condensation that covered both sides of the rear window and all across the bottom.
11 (ETH, page 88, lines 9-89, line 24.)

12  The impact of condensation testimony is that it suggests to the agents that the contents
13 of the vehicle are changing the temperature within the vehicle, thereby causing condensation.
14 To one agent, only a little condensation occurs. To the other agent, a lot of condensation
15 occurs. In either event, neither agent is sure what causes condensation; they only know that
16 it is significant. Assuming this testimony is credible, the Court is inclined to believe Agent
17 De La Riva as to the size of the condensation spot. The Court takes no position as to whether
18 condensation is possible with the known temperature, dew point, and humidity of the night
19 in question. The Court finds Agent De La Riva more credible on this issue, insofar as the
20 Government's Henthorn disclosure casts a doubt on Agent Rodriguez's credibility.

21  The testimony that the Defendants' vehicle was not bouncing very much because it
22 was heavily loaded is troubling. On November 18, 2008, at a Suppression Hearing in United
23 States v. Gilbert Jude Perez, Border Patrol Agent Michael Layton testified that a heavily
24 loaded vehicle would bounce quite a bit. (CR-08-1164-TUC-CKJ(BPV) ETH, page 23, lines
25 8-25; page 24, lines 18-23.) If the combined testimony is considered credible, heavily loaded
26 vehicles in Cochise County bounce very little, but vehicles in Pima County bounce quite a
27 bit. Some people look; some people do not. This is human behavior. A vehicle bouncing
28 or not bouncing speaks to the laws of physics, which are not variable.

In this case, the articulable facts are:

1) A vehicle was traveling on a road not extensively used at the time and day in question.
2) A vehicle was weighted down, with only three passengers visible and no obvious cargo to explain the load.
3) The rear-seat passenger was sitting in the middle of the seat (the most uncomfortable position in the vehicle).
4) A vehicle was traveling northbound on Highway 191 at four to five miles per hour for up to two minutes.
5) A vehicle was on a road to the west of Douglas that avoids checkpoints.

The Court rejects as articulable facts:

1) The condensation observed by the agents.
2) The bounce characteristics of the vehicle.
3) The looking/not looking of any occupant in the Defendants' vehicle.
4) That a vehicle registered to a Cochise County corporation is an indicator of criminal activity.

On a totality of the circumstances, this Court finds a reasonable suspicion of articulable facts to believe criminal activity was afoot to justify a seizure of Purita's vehicle. United States v. Robert L., 874 F2d 701 (9th Cir. 1989). United States v. Medina-Gasca, 739 F2d 1451 (9th Cir. 1984). United States v. Bugarin-Casas, 484 F2d 853 (9th Cir. 1974). United States v. Arvizu, 122 S. Ct. 744 (2002).

**IT IS ORDERED** that the Government provide the Defendants with USBP Agent Rodriguez's letter of sanction.

## CONCLUSION

It is the recommendation of this Court that the District Judge, after her independent review and consideration, enter an Order **DENYING** Defendants' Motion to Suppress [Doc. 34].

Pursuant to 28 U.S.C. §636(b)(1)(B), the parties have ten (10) days from the date of this Report and Recommendation to file written objections to these findings and recommendations with the District Court. Any objections filed should be filed as CR 08-01195-TUC-CKJ.

DATED this 3rd day of February, 2009.

_____
Bernardo P. Velasco
United States Magistrate Judge