IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| UNITED STATES OF AMERICA, ) | CR 08-1195-TUC-CKJ |
| ) | |
| Plaintiff, ) | |
| ) | **ORDER** |
| vs. ) | |
| ) | |
| ARGENTINO SALVADORE PURITA ) | |
| and JERRY DON BROWN, ) | |
| ) | |
| Defendants. ) | |
| ) | |

On February 3, 2009, Magistrate Bernardo P. Velasco issued a Report and Recommendation [Doc. #52] in which he recommended that Defendant's Motion to Suppress the stop of his vehicle [Doc. #34] be denied.

The Report and Recommendation indicated that any party could file written objections within ten days after being served with a copy of the Report and Recommendation. On February 11, 2009, Defendants filed a Motion to Continue the Report and Recommendation Objection Deadline [Doc. #59]. That motion was granted by this Court on February 12, 2009. Defendant Purita filed his Objection to the Report and Recommendation on March 2, 2009. Defendant Brown filed a motion to join in the Objections [Doc. #63] on the same date. The Government filed its Response to the objections on March 12, 2009, but did not file any of its own objections.

*Standard of Review*

The Court reviews de novo the objected-to portions of the Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The Court reviews for clear error the unobjected-to portions of the Report and Recommendation. *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); *See also, Conley v. Crabtree*, 14 F.Supp.2d 1203, 1204 (D. Or. 1998).

*Factual Background*[1]

On August 28, 2008, U.S. Border Patrol (USBP) Agents Manuel Rodriguez and Fernando De La Riva were on patrol near Douglas, Arizona, in an unmarked service vehicle. The agents were observing traffic at the intersection of Leslie Canyon Road and Glenn Road as part of a USBP operation. They positioned their service vehicle just off the roadway so that they were facing southeast, with their headlights on, in order to observe traffic heading north on Leslie Canyon Road. At approximately 10:45 p.m., the agents observed the headlights of a vehicle approaching their location.[2] The agents observed the vehicle, later identified as a silver 2008 Toyota Sienna minivan, miss the turn to Glenn Road and travel on to the shoulder of the road to make the turn. The minivan quickly corrected itself and, as it passed in front of the headlights of the USBP service vehicle, the agents saw a passenger who never looked in their direction, despite what they perceived to be a near-miss of their vehicle. Only three visible occupants of the vehicle were observed by the agents at that time:

---

[1] The factual background is adopted from Magistrate Judge Velasco's Report and Recommendation. Defendants object to the five (5) articulable facts for reasonable suspicion for the stop specifically delineated by Magistrate Judge Velasco. These facts are highlighted herein.

[2] Magistrate Judge Velasco determined the road was not extensively used at that time and on that day. As such, a vehicle traveling that route was an articulable fact giving rise to reasonable suspicion for the stop. No objection has been made to these findings, and based on a review of the record, the Court holds that these findings were not clearly erroneous and adopts these facts as true. *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); *See also, Conley v. Crabtree*, 14 F.Supp.2d 1203, 1204 (D. Or. 1998).

a driver, a front-seat passenger, and one passenger in the back seat.[3] The agents also noted that the minivan seemed to be riding extremely low for only containing three occupants.[4]

The agents began to follow the minivan as it traveled westbound on Glenn Road. The agents ran a registration check and the vehicle's registration came back to a corporation in Sierra Vista, Arizona. As the agents followed the minivan, the minivan reduced its speed and the suspension of the vehicle was not bouncing very much, thereby suggesting that the minivan was carrying excessive weight in its rear area. The agents continued to follow the minivan for approximately three miles. When the minivan came to a stop at State Route 191,

---

[3]Magistrate Judge Velasco found "[t]he rear seat passenger sitting in the middle of the seat (the most uncomfortable position in the vehicle)" to be an articulable fact in determining reasonable suspicion for the stop. R & R at 6. Defendants object to this finding as "logically inconsistent." Obj. to R & R at 6 [Doc. #62]. Defendants assert that Material Witness Rosa Gomez, who was seated in the passenger seat directly behind the driver, had to be upright in order to see Defendant Purita's driving behavior. A review of the record shows that both agents testified to seeing only a single passenger seated in the middle seat. Moreover, Agent De La Riva unequivocally identified the middle seat passenger as the woman wearing a white and pink shirt, who is depicted in Exhibit 3. Mot. to Suppress Hr'g Tr. 48:12-49:1 Jan. 1, 2009. Defendants' argument that Material Witness Rosa Gomez could not have been scrunched down in her seat and still observe Defendant Purita's driving behavior is without merit. There is nothing in the record to suggest that she was visible to the agents during the time that they were following the minivan. Defendants point to Agent Rodriguez's response to defense counsel's questioning as evidence that the middle passenger's seating position was "'not significant' in terms of 'relevance to a reasonable suspicion evaluation.'" Obj. to R & R at 7 [Doc. #62]. On redirect, however, Agent Rodriguez admitted to backing off from his opinion because of the way defense counsel was questioning him. Mot. to Suppress Hr'g Tr. 116:15-23 Jan. 1, 2009. Agent Rodriguez reaffirmed that this was a factor that he considered. *Id.* at 116:24-25. As such, this Court adopts Magistrate Judge Velasco's finding that the rear seat passenger sitting in the middle seat as an articulable fact relevant to reasonable suspicion for the stop.

[4]Magistrate Judge Velasco found this to be an articulable fact in support of reasonable suspicion. Defendants object, pointing to Ninth Circuit precedent and stating that "thousands of people, not involved in smuggling, drive heavily-laden cars every single day." Obj. to R & R at 5 [Doc. #62]. Defendants might have a point if this were the sole fact upon which the stop was based, but it was not. Viewing the record as a whole this is one of several factors that the agents relied upon in their development of reasonable suspicion for the stop. This Court adopts Magistrate Judge Velasco's finding that the heavily-loaded appearance of the minivan with only three passengers is an articulable fact in support of reasonable suspicion.

the agents observed that there was condensation on the corners of the rear window. The minivan then turned on to State Route 191, which, in the agents' experience, is a common route used by smugglers.[5] For the next two to three minutes, the vehicle traveled north at a speed of four to five miles per hour.[6] A stop of the minivan was initiated when USBP Agent De La Riva activated the service vehicle's emergency equipment, and the minivan pulled over.

As the agents approached, they saw through the rear window that there were individuals lying down in the rear cargo area of the minivan. Agent Rodriguez approached the driver, who was later identified as Defendant Argentino Salvadore Purita, and instructed him to turn the vehicle engine off. After a second command to turn the engine off, Purita complied. The front passenger was identified as Co-Defendant Jerry Don Brown. Each Defendant was observed to have a firearm holstered on his hip. The Defendants were secured and taken into custody. Also located in the minivan were a total of eight illegal aliens, who were all detained.

---

[5] Magistrate Judge Velasco found this to be an articulable fact in support of reasonable suspicion. Defendants object asserting that because there are very few routes out of Douglas, Arizona and because they turned off Leslie Canyon Road, a "more suspicious route," onto a road that might lead to Tombstone, which has a checkpoint to its north, this fact cannot support reasonable suspicion. Obj. to R & R at 9 [Doc. #62]. Defendants assertions are speculative. Both agents testified that smuggling activity occurred in this area, and that there were very few residences on this route. Further, there is no checkpoint on Hwy. 191. Additionally, all of this was occurred after 10:45 p.m., not a busy time on any route out of Douglas. As such, reviewing this record as a whole, this Court adopts Magistrate Judge Velasco's finding that the vehicle was on a road to the west of Douglas which avoids checkpoints.

[6] Magistrate Judge Velasco found this to be an articulable fact in support of reasonable suspicion for the stop. Defendants object stating that "[t]he record does not support any conclusion that this factor was considered by either agent." Obj. to R & R at 8 [Doc. #62]. The record shows, however, that it was Defendants' slow speed that ultimately prompted the agents to activate their emergency lights. Mot. to Suppress Hr'g Tr. 78:9-14 Jan. 1, 2009. Therefore, this Court adopts Magistrate Judge Velasco's finding that the vehicle traveling on Hwy. 191 at five (5) miles per hour for up to two minutes is an articulable fact in support of reasonable suspicion.

Two of the illegal aliens, Rosa Maria Gomez-Hernandez and Rafael Gonzalez, were held as material witnesses. The material witness interviews were video-recorded (a copy of the video-recorded interviews was disclosed on a CD to the Defendants on September 16, 2008). The interviews were conducted by USBP Agent Manuel Rodriguez, with USBP Agent David Mendoza also being present. USBP Agent Rodriguez reported that material witness Rosa Maria Gomez-Hernandez stated that, on the day of the incident, the driver of the van (Defendant Purita) almost hit the USBP vehicle and that she hoped the immigration officials would pull them over because she was scared.

Material witness Gomez-Hernandez later testified at her video deposition conducted in this matter on October 8, 2008. She first testified that the van went a "little bit off highway, just a little bit," but later agreed with defense counsel that the van made a wide turn when it turned in view of the USBP vehicle. She testified that the van did not hit the USBP vehicle. Material witness Rafael Gonzalez testified that he was hiding in the cargo area of the minivan, along with four other individuals, and their bodies lay partially on top of one another, so that, as a result, he did not observe any events leading up to the stop of the vehicle.

*Reasonable Suspicion*

For the police to conduct a valid stop, they must "have a reasonable suspicion supported by articulable facts that criminal activity may be afoot." *United States v. Sokolow*, 490 U.S. 1, 7 (1989)(internal quotes and citation omitted). In the context of searches conducted by the Border Patrol, factors to be considered for reasonable suspicion include: "1) characteristics of the area; 2) proximity to the border; 3) usual patterns of traffic and time of day; 4) previous alien or drug smuggling in the area; 5) behavior of the driver, including obvious attempts to evade officers; 6) appearance or behavior of passengers; 7) model and appearance of the vehicle; and 8) officer experience." *U.S. v. Garcia-Barron*, 116 F.3d 1305, 1307 (9th Cir. 1997) (internal quotes and citation omitted) (holding a defendant's use of a rental car and attempt to avoid checkpoint established reasonable suspicion; noting that rental

- 5 -

cars were commonly used in smuggling). Whether there was reasonable suspicion for the stop must be evaluated by looking at the totality of the circumstances. *United States. v. Alvarez*, 899 F.2d 833, 836 (9th Cir. 1990). The collective knowledge of all the officers involved must be considered when evaluating these circumstances. *United States v. Michael R.*, 90 F.3d 340, 346 (9th Cir. 1996); *United States v. Hensley,* 469 U.S. 221, 232-33 (1985). What may seem to be innocuous conduct when viewed in isolation may be appropriately considered when determining if reasonable suspicion exists under the totality of the circumstances; thus, it is inappropriate to view factors in isolation and to give no weight to factors which may have an innocent explanation. *United States v. Arvizu*, 534 U.S. 266, 273-275 (2002).

Under the totality of the circumstances in this case, the Border Patrol Agents possessed reasonable suspicion to stop Defendants. Although each fact in the circumstances previously described, taken individually, may appear innocent, it had significance to trained law enforcement officers. Through their experience, the agents knew the area in question to be a major smuggling artery, that the roads on which the vehicle was traveling were not extensively used given the time of night, it was unusual to see a single passenger seated in the middle of the back seat, and the vehicle appeared weighted down despite the appearance of only a driver and two passengers. With this in mind, the agents were rightfully suspicious after they followed the vehicle down Glenn Road and then northbound onto Hwy. 191, where it traveled at five miles per hour for as long as two minutes. At this point, the agents stopped Defendants. Based on the totality of these circumstances, the Court finds that the Border Patrol agents had reasonable suspicion to stop Defendants. *See United States v. Arvizu*, 534 U.S. at 273-275.

Accordingly, IT IS HEREBY ORDERED that:

1. Defendant Brown's Motion to Join in the Objections [Doc. #63] is GRANTED;

2. The Report and Recommendation [Doc. #52] is ADOPTED;

1   3.   Defendant Purita's Motion to Suppress [Doc. #34] is DENIED; and

2   4.   The Clerk of the Court is directed to return all exhibits to counsel.

4   DATED this 8th day of April, 2009.

```
                              _____
                                      Cindy K. Jorgenson
                                   United States District Judge
```